IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01357-MEH

FALGUN PATHAK,

      Plaintiff,

v.

FEDEX TRADE NETWORKS T AND B INC.,

      Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Defendant FedEx Trade Networks T and B, Inc. ("FedEx") seeks summary judgment on all nine of Plaintiff Falgun Pathak's employment discrimination and retaliation claims. Because Mr. Pathak agreed to dismiss his seventh, eighth, and ninth causes of action, I will analyze whether summary judgment is proper as to his first six claims. I first find that Mr. Pathak timely exhausted his claims only as they relate to his termination and the failures to promote in May and June 2014. I then hold that Mr. Pathak demonstrates triable issues of fact regarding his Title VII and § 1981 discriminatory termination and failure to promote claims. However, Mr. Pathak produces insufficient evidence to support his prima facie disability discrimination claim. Regarding Mr. Pathak's retaliation claims, I hold disputed issues of material fact exist as to the Title VII and § 1981 claims, but not as to the Americans with Disabilities Act ("ADA") violation. Accordingly, I grant in part and deny in part FedEx's Motion for Summary Judgment.

# BACKGROUND

## I.    Findings of Fact

I make the following findings of fact viewed in the light most favorable to Mr. Pathak, who is the non-moving party in this matter.[1]

1.    Mr. Pathak, who is originally from India, began working for FedEx in April 2012 as an associate customer service representative in Salt Lake City, Utah.  Def.'s Statement of Facts ¶¶ 1, 63, ECF No. 93; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 1, 63, ECF No. 99.

2.    At the time he joined FedEx, Mr. Pathak had nineteen years of experience in freight forwarding.  Dep. of Falgun Pathak, November 8, 2017 ("Pathak dep."), 22:8–:15, ECF Nos. 89-1, 99-7.

3.    At Mr. Pathak's request, FedEx approved his transfer to its Denver, Colorado office in July 2012.  Def.'s Statement of Facts ¶ 6; Pl.'s Resp. to Def.'s Statement of Facts ¶ 6.  When granting Mr. Pathak's request, FedEx's managing director of western region operations, Andrew Holmes, stated to Mr. Pathak, "You have shown over the last 30 days that you have the aptitude and attitude to work with customers and fellow employee's [*sic*]."  ECF No. 99-3.

4.    After transferring to Denver, Mr. Pathak reported to Darlene Dallacarus, who reported to Mr. Holmes and John Krupar—the branch manager of the Denver office.  Def.'s Statement of Facts ¶ 7; Pl.'s Resp. to Def.'s Statement of Facts ¶ 7.

5.    In January 2013, Ms. Dallacarus and Mr. Krupar asked Mr. Pathak why Asian people get cold sores, and they commented that Americans do not have cold sores.  Def.'s Statement

---

[1] These facts are undisputed unless otherwise cited.

of Facts ¶ 67; Pl.'s Resp. to Def.'s Statement of Facts ¶ 67.

6.      Shortly before this comment, Mr. Pathak emailed Mr. Holmes and Mr. Krupar to inquire about potential promotions. ECF No. 89-7, at 124; Def.'s Statement of Facts ¶ 8; Pl.'s Resp. to Def.'s Statement of Facts ¶ 8. Mr. Holmes responded that Mr. Pathak had to remain in his current position for one year before being eligible for a promotion, but FedEx would consider his April 16, 2012 start date in Salt Lake City as his promotion review date. ECF No. 89-7, at 120–23.

7.      Notwithstanding Mr. Holmes' statement, in February 2013 FedEx gave Mr. Pathak a raise and promoted him to customer service representative. ECF No. 89-7, at 130; Def.'s Statement of Facts ¶ 8; Pl.'s Resp. to Def.'s Statement of Facts ¶ 8.

8.      When Mr. Pathak accepted the promotion, Mr. Holmes told him that FedEx would increase his salary an additional six percent once cost control measures were lifted. ECF No. 89-7, at 137. During the following months, Mr. Pathak repeatedly asked his supervisors about the status of this raise. *Id.* at 131–37.

9.      In one conversation, Mr. Pathak complained that he had not received a raise "because of the color of [his] skin." ECF No. 99-8.

10.     In March 2013, Ms. Dallacarus notified Mr. Krupar that Mr. Pathak had consistently been late for work. Mr. Krupar responded, "in Asia everyone is late all the time but that does not cut it here." ECF No. 89-13, at 3; Def.'s Statement of Facts ¶ 68; Pl.'s Resp. to Def.'s Statement of Facts ¶ 68.

11.     In November 2013, FedEx approved the six percent raise Mr. Pathak had been requesting. Def.'s Statement of Facts ¶ 12; Pl.'s Resp. to Def.'s Statement of Facts ¶ 12; ECF No. 89-7,

at 138.

12.     In May 2014, Mr. Pathak applied for a supervisor promotion.  Although Mr. Krupar

        interviewed Mr. Pathak for the position, he eventually hired Chad Teschler.  Mr. Teschler,

        a Caucasian American, had six and a half years of relevant experience.  Def.'s Statement of

        Facts ¶¶ 17–18; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 17–18; Dep. of Chad Teschler,

        Nov. 13, 2017 ("Teschler dep."), 22:8–:11, ECF No. 99-13.

13.     On June 23, 2014, Mr. Krupar emailed Mr. Pathak requesting to meet with him in his office

        regarding feedback for the supervisor position and Mr. Pathak's behavior toward him and

        other supervisors.  ECF No. 89-8, at 14.  Mr. Pathak responded, "If protocol allows please

        forward me by email." *Id.*

14.     Notwithstanding Mr. Pathak's request, Mr. Krupar and Mr. Pathak met in person that same

        day.  Def.'s Statement of Facts ¶ 21; Pl.'s Resp. to Def.'s Statement of Facts ¶ 21.

15.     During the meeting, Mr. Krupar informed Mr. Pathak that he did not receive the promotion

        because he does not have "American experience," and his Indian accent is too strong.

        Pathak dep. 139:21–141:25.

16.     Additionally, Mr. Krupar told Mr. Pathak that he has an anger management problem, stating,

        "Have you seen your face in the mirror? You look like this."  Mr. Pathak construed Mr.

        Krupar's facial expression to be portraying a monkey.  Def.'s Statement of Facts ¶ 22; Pl.'s

        Resp. to Def.'s Statement of Facts ¶ 22; Pathak dep. 136:7–138:24.

17.     Shortly after the meeting, Mr. Krupar came to Mr. Pathak's cubicle, pulled his chair away

        from his desk, shut down his computer, and told him to leave the office.  Def.'s Statement

        of Facts ¶ 24; Pl.'s Resp. to Def.'s Statement of Facts ¶ 24.

18.  Three days later, on June 26, 2014, Mr. Pathak began an FMLA medical leave of absence. Mr. Pathak remained on FMLA leave until September 14, 2014. Pl.'s Resp. to Def.'s Statement of Facts ¶ 25; ECF No. 100-3, at 12.

19.  On his first day of leave, Mr. Pathak submitted a formal employee statement form to FedEx's Human Resources ("HR") department. Mr. Pathak detailed the events at the June 23, 2014 meeting in response to a question asking him how he has been discriminated against or harassed. Def.'s Statement of Facts ¶ 27; Pl.'s Resp. to Def.'s Statement of Facts ¶ 27; ECF No. 99-14, at 3–6.

20.  Mr. Holmes and Martin Wilbur, an HR representative, conducted an investigation of Mr. Pathak's complaint. As part of the investigation, Mr. Pathak informed Mr. Holmes and Mr. Wilbur that he had approached the EEOC about his allegations. Def.'s Statement of Facts ¶¶ 28–29; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 28–29.

21.  Additionally, Mr. Pathak told Mr. Krupar in September 2014 that he had informed the EEOC about the June 23 incident. Pathak dep. 277:10–:20.

22.  In July 2014, while still on FMLA leave, Mr. Pathak was diagnosed with "major depressive affective disorder." ECF No. 100-7. Mr. Pathak's doctor noted that Mr. Pathak had poor concentration, headaches, major depression, and anxiety. ECF No. 100-3, at 6.

23.  Before returning from FMLA leave, Mr. Krupar interviewed Mr. Pathak for a team lead position. Def.'s Statement of Facts ¶ 30; Pl.'s Resp. to Def.'s Statement of Facts ¶ 30.

24.  However, Mr. Krupar selected Coral Zobel, of Mexican Hispanic origin, for the position. Ms. Zobel originally came to FedEx from Graebel Relocation Services, and she worked in FedEx's brokerage department for one or two years before receiving the promotion. Def.'s

Statement of Facts ¶ 30; Pl.'s Resp. to Def.'s Statement of Facts ¶ 30; Dep. of John Victor Krupar, November 9, 2017 ("Krupar dep."), 154:17–155:6, ECF No. 99-6.

25. On September 5, 2014, Mr. Pathak and Irene Phu, FedEx's HR representative, discussed Mr. Pathak's need to work part-time for one or two weeks and any other accommodations he may need upon returning to work. Def.'s Statement of Facts ¶ 32; Pl.'s Resp. to Def.'s Statement of Facts ¶ 32.

26. After the conversation, Ms. Phu sent Mr. Pathak an accommodations form. ECF No. 89-6, at 65–68. Mr. Pathak does not remember whether he submitted the form, and neither party has any record of him returning the form. Pathak dep. 207:3–:9.

27. When Mr. Pathak returned to work on September 15, 2014, his new supervisor, Mr. Teschler, permitted him to attend regular appointments and work part time for several weeks. Def.'s Statement of Facts ¶ 34; Pl.'s Resp. to Def.'s Statement of Facts ¶ 34; ECF No. 89-8, at 72.

28. On November 14, 2014, Mr. Pathak attended a closed-door team meeting to discuss the reallocation and reassignment of customer accounts. Mr. Pathak's supervisors spoke with him about an incident in which he had apologized to a customer about a co-worker's conduct. Def.'s Statement of Facts ¶ 36; Pl.'s Resp. to Def.'s Statement of Facts ¶ 36; Krupar dep. 199:4–200:16.

29. During the meeting, Mr. Pathak complained that Mr. Teschler and Mr. Krupar treated him differently and favored other employees. *Id.* at 208:10–209:24.

30. Shortly after returning to his desk, Mr. Pathak collapsed and lost consciousness. Paramedics arrived and moved him from the office to an ambulance. However, Mr. Pathak declined to

be taken to the hospital, and he returned to work.  Def.'s Statement of Facts ¶ 37; Pl.'s Resp. to Def.'s Statement of Facts ¶ 37.

31.    Later that same day, Mr. Pathak informed Mariann Cantie in HR that, based on the discussion at the meeting, "it is very clear th[at] retaliation is going on to me so I can leave [the] office."  ECF No. 29-8, at 134; Def.'s Statement of Facts ¶ 36; Pl.'s Resp. to Def.'s Statement of Facts ¶ 36.  Additionally, Mr. Pathak requested to have HR present in all future meetings with his supervisors.  ECF No. 89-8, at 137.

32.    Mr. Pathak then took an approximately one-month medical leave.  ECF No. 89-9, at 9.

33.    Before returning to work in mid-December 2014, Mr. Pathak emailed HR stating that he had been suffering retaliation since 2012 because of his race and color.  Additionally, Mr. Pathak requested assurance that his supervisors would not retaliate against him upon his return.  ECF No. 89-9, at 26;  Def.'s Statement of Facts ¶ 39; Pl.'s Resp. to Def.'s Statement of Facts ¶ 39.

34.    Mr. Pathak then returned to work, and on December 16, 2014, Mr. Teschler emailed him about the status of several issues his co-workers had encountered with his files while he was on medical leave.  ECF No. 29-9, at 39–40; Def.'s Statement of Facts ¶ 42; Pl.'s Resp. to Def.'s Statement of Facts ¶ 42.

35.    Later that day, Mr. Pathak verbally accused Mr. Teschler of sending the email as retaliation.  Def.'s Statement of Facts ¶ 44; Pl.'s Resp. to Def.'s Statement of Facts ¶ 44.

36.    Mr. Pathak also responded to Mr. Teschler via email.  He reiterated that Mr. Teschler's complaints were unwarranted and that the email was retaliatory.  Further, Mr. Pathak stated that he was "not happy to continue further closed door meeting[s]."  ECF No. 89-9, at 38–39.

37.    That evening, Mr. Teschler informed Mr. Pathak via email that he must attend an in-person

meeting the next day.  ECF No. 89-9, at 45.  Mr. Pathak responded that a closed-door meeting is not safe, and he "would like to have [the] meeting agenda and message by email . . . considering all previous incidents," and because it will be beneficial to his "health recovery."  *Id.* at 44.

38.     After Mr. Teschler insisted that Mr. Pathak attend in person, Mr. Pathak emailed Ms. Cantie to ask her advice on whether he must attend.  Mr. Cantie responded that the request for an in-person meeting is reasonable, and he is expected to attend.  She informed Mr. Pathak that an HR representative would attend via telephone.  *Id.* at 47–49.

39.     Mr. Pathak eventually agreed to attend the meeting.  However, shortly after the meeting began Mr. Pathak asked to leave three times, because he felt as if he was going to collapse.  Dep. of Michelle Hawkins, Dec. 15, 2017 ("Hawkins dep."), 28:24–29:5, ECF No. 89-6; Pathak dep. 289:11–290:5.  Mr. Krupar and Mr. Teschler continually asked Mr. Pathak to sit down and complete the meeting.  Def.'s Statement of Facts ¶ 53 ; Pl.'s Resp. to Def.'s Statement of Facts ¶ 53.

40.     Mr. Pathak complained that the meeting was retaliatory, and he was not comfortable.  He eventually left the meeting after allegedly asking for permission from the HR representative.  Def.'s Statement of Facts ¶ 53 ; Pl.'s Resp. to Def.'s Statement of Facts ¶ 53; Pathak dep. 295:18–:24.

41.     At some point before or shortly after the meeting, Mr. Teschler and Mr. Krupar drafted a written warning to give to Mr. Pathak.  ECF No. 99-25.  However, they did not give him the warning.  Pathak dep. 392:7–:10; Krupar dep. 181:8–:9.

42.     Instead, they called Mr. Pathak back into Mr. Krupar's office and notified him that they were placing him on paid suspension pending FedEx's investigation of his conduct on December

16 and 17, 2014. ECF No. 89-9, at 50; Def.'s Statement of Facts ¶ 56; Pl.'s Resp. to Def.'s

Statement of Facts ¶ 56.

43.     On December 22, 2014, Mr. Holmes sent Mr. Pathak a letter terminating his employment.

The letter informed Mr. Pathak that his conduct on December 16 and 17 violated FedEx's

Acceptable Conduct Policy. ECF No. 89-9, at 51.

44.     The decision to terminate Mr. Pathak was made by several individuals, including Mr.

Krupar, Mr. Teschler, Mr. Holmes, and HR representatives. Pl.'s Statement of Facts ¶ 14;

Def.'s Resp. To Pl.'s Statement of Facts, ECF No. 103.

45.     On February 17, 2015, Mr. Pathak filed a charge of discrimination with the EEOC. The

charge complained of discrimination on the basis of race (Asian), color (dark skin), age,

disability, and national origin (East Indian). Additionally, Mr. Pathak stated that FedEx

retaliated against him. The charge specifically mentioned being denied promotions in May,

June, and July 2014 and being terminated in December 2014. ECF No. 99-28; Def.'s

Statement of Facts ¶ 62; Pl.'s Resp. to Def.'s Statement of Facts ¶ 62.

46.     FedEx has an "acceptable conduct policy" that gives managers the ability to issue formal

written complaints to employees before terminating them. ECF No. 99-2, at 3.

47.     During Mr. Pathak's employment with FedEx, supervisors issued written warnings pursuant

to the policy to at least three other employees who made inappropriate comments or became

angry at work. ECF Nos. 46–48.

48.     Although Mr. Pathak's supervisors informally counseled him on his behavior and issued

performance reviews discussing areas of improvement, Mr. Pathak never received a formal

warning. Def.'s Statement of Facts ¶ 14; Pl.'s Resp. to Def.'s Statement of Facts ¶ 14;

Krupar dep. 181:8–:9; ECF No. 99-3.

## II.    Procedural History

Mr. Pathak initiated this case on June 6, 2016.  Compl., ECF No. 1.  After counsel for Mr. Pathak entered their appearances, Mr. Pathak filed the operative Amended Complaint on June 12, 2017.  Am. Compl., ECF No. 67.  The Amended Complaint asserts nine causes of action: (1) discrimination on the basis of race and national origin in violation of Title VII; (2) retaliation in violation of Title VII; (3) discrimination in violation of 42 U.S.C. § 1981; (4) retaliation in violation of 42 U.S.C. § 1981; (5) discrimination and failure to accommodate in violation of the ADA; (6) retaliation in violation of the ADA; (7) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (8) discrimination and retaliation in violation of the Family Medical Leave Act ("FMLA"); and (9) wrongful discharge in violation of public policy for Mr. Pathak's exercise of his rights under the Colorado Workers' Compensation Act.  *Id.* ¶¶ 94–163.

After the parties completed discovery, FedEx filed the present motion, which seeks summary judgment on all nine of Mr. Pathak's claims.  Mot. for Summ. J., ECF No. 89.  FedEx first asserts that Mr. Pathak failed to include many of the discrete acts underlying his claims in his EEOC charge.  *Id.* at 17.  Additionally, FedEx contends that even if Mr. Pathak included these acts, they are untimely, as they occurred more than 300 days prior to the date of the charge.  *Id.* at 17–18.  Then, FedEx argues Mr. Pathak fails to demonstrate a disputed issue of material fact regarding any of his causes of action.  *Id.* at 18–28.

Mr. Pathak responded to FedEx's motion on April 20, 2018.  Resp. to Mot. for Summ. J., ECF No. 99.  Mr. Pathak asserts he timely exhausted his termination claim.  *Id.* at 25.  Additionally, Mr. Pathak contends I may consider FedEx's actions occurring outside the 300-day period, because they are probative of FedEx's discriminatory and retaliatory intent.  *Id.*  Then, Mr. Pathak argues that triable issues of fact preclude summary judgment on Mr. Pathak's discrimination and retaliation

claims under Title VII, § 1981, and the ADA. *Id.* at 26–35. Contemporaneous with his response, Mr. Pathak voluntarily dismissed his ADEA, FMLA, and common law wrongful discharge claim. Mot. to Dismiss, ECF No. 101. FedEx subsequently filed a reply in support of its motion. Reply in Supp. of Mot. for Summ. J., ECF No. 103.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

I first analyze whether Mr. Pathak timely exhausted his administrative remedies for each of the discrete acts in his Amended Complaint. I then discuss the merits of Mr. Pathak's Title VII and § 1981 discrimination claims, and separately, his ADA discrimination claim. Lastly, I analyze whether Mr. Pathak states a retaliation claim under Title VII, § 1981, or the ADA.

## I.     Administrative Exhaustion

"A plaintiff must exhaust his administrative remedies before bringing suit under Title VII . . . ." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1049 (10th Cir. 1997). This requires a plaintiff to include in an EEOC charge each discrete employment action on which he bases his claims. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). Discrete acts include employment decisions such as termination, failure to promote, denial of transfer, and refusal to hire. *Id.*

Although a charge much include each employment action, plaintiffs are not required to express their claims with exacting precision. *See Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (stating that EEOC charges are to be to be liberally construed "in determining whether administrative remedies have been exhausted as to a particular claim"). A plaintiff's claim is limited to "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.*

Additionally, "Title VII, ADEA and ADA, require that [plaintiffs] file a timely administrative claim within 300 days of the challenged discriminatory action." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006), *abrogated on other grounds by Burlington N. Santa Fe Ry Co. v. White*, 548 U.S. 53, 68 (2006); 42 U.S.C. § 2000e-5(e)(1). Here, Mr. Pathak filed his EEOC charge on February 17, 2014. Charge of Discrimination 1, ECF No. 99-28. Therefore, any discrete acts occurring prior to April 23, 2014 are untimely.

> FedEx argues Mr. Pathak failed to timely exhaust the following eight discrete acts:
>
> (1) failure to promote him to Team Lead in 2013; (2) paying him less than other employees; (3) failure to give him a raise; (4) failure to renew his TSA status; (5) holding him to a stricter time-in-position requirement than other employees; (6) denial of leave or vacation; (7) failure to provide him with a reasonable accommodation; and (8) giving him a lower rating on his annual performance review.

Mot. for Summ. J. 17, ECF No. 93. According to FedEx, Mr. Pathak failed to detail these actions in his EEOC charge, and many of these actions occurred before February 17, 2014. *Id.* at 17–18.

I agree that Mr. Pathak failed to exhaust the above eight actions. Mr. Pathak's charge mentions only the "monkey" incident, the failures to promote in May and June 2014, his suspension, and his termination. Charge of Discrimination 1–2. Moreover, in his response brief, Mr. Pathak does not contest that he failed to exhaust these eight actions. Resp. to Mot. for Summ. J. 25, ECF

No. 99.

Regarding Mr. Pathak's failure to accommodate allegation specifically, although the charge includes disability discrimination, "an administrative charge alleging disability discrimination alone does not automatically exhaust administrative remedies for a failure-to-accommodate claim." *Lara v. Unified Sch. Dist. #501*, 350 F. App'x 280, 285 (10th Cir. 2009) (unpublished). Moreover, not only does the charge not mention a failure to accommodate, it does not even state that Mr. Pathak requested an accommodation. Because the text of the charge would not put FedEx or the EEOC on notice that Mr. Pathak was complaining about a failure to accommodate, Mr. Pathak failed to exhaust this claim. *See Jones*, 502 F.3d at 1187 (finding that the plaintiff did not exhaust a failure to accommodate claim, because "the text of the charge does not contain facts that would prompt an investigation of [the plaintiff's] claim that [the defendant] failed to accommodate him").

Mr. Pathak argues in response that he timely exhausted his termination claim. Resp. to Mot. for Summ. J. 25. FedEx does not assert that Mr. Pathak did not exhaust his termination claim, and I agree that Mr. Pathak's charge includes this act. Additionally, I find that the charge exhausts his claims that FedEx failed to promote him to supervisor in May 2014 and team lead in June 2014. Indeed, each of these employment actions occurred after April 23, 2014, and the EEOC charge specifically mentions them. Charge of Discrimination 2.

Because these are the only discrete acts Mr. Pathak included in his charge, I will limit my analysis of Mr. Pathak's claims to the failures to promote in May and June 2014 and the termination. However, I may consider the unexhausted acts as evidence that FedEx terminated and failed to promote Mr. Pathak for discriminatory reasons. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (stating that failing to exhaust administrative remedies does not "bar an employee from using the prior acts as background evidence in support of a timely claim"); *Cohen v. Pub.*

*Servs. Co. of Colo.*, No. 13-cv-00578-WYD-BNB, 2014 WL 3559399, at *4 (D. Colo. July 18, 2014) ("This ruling does not, however, preclude [the plaintiff] from potentially using evidence of events that occurred prior to December 1, 2006 as background evidence for her timely discrimination and retaliation claims.").

## II.     Discrimination Claims

Mr. Pathak's first, third, and fifth claims allege FedEx unlawfully discriminated against him on the basis of race, national origin, and disability when it failed to promote him and terminated his employment. Am. Compl. ¶¶ 94–101, 111–17, 128–39, ECF No. 67. Because Mr. Pathak does not present direct evidence of discrimination, I apply the *McDonnell Douglas* burden-shifting framework to all of his claims. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (Title VII and § 1981); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (ADA). Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to proffer 'a legitimate non-discriminatory purpose for the adverse employment action.'" *Id.* at 1216–17 (quoting *Orr v. City of Alburquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)). "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Orr*, 417 F.3d at 1149; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (stating that under the third step of the *McDonnell Douglas* framework, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination").

I first apply the *McDonnell Douglas* framework to Mr. Pathak's Title VII and § 1981 claims, because they involve identical elements and evidence. *See, e.g., Carney v. City & County of Denver*,

534 F.3d 1269, 1273 (10th Cir. 2008). I then analyze whether disputed issues of material fact prevent summary judgment on Mr. Pathak's ADA discrimination claim.[2]

A.      Title VII and § 1981 Causes of Action: First and Third Claims

1.      Failure to Promote

Mr. Pathak alleges FedEx violated Title VII and § 1981 when it failed to promote him to supervisor in May 2014 and to team lead in June 2014. Am. Compl. ¶¶ 32–38, 97. Disputed issues of material fact exist regarding these claims.

a.      Prima Facie Case

To establish a prima facie case of discriminatory failure to hire or promote, Mr. Pathak must demonstrate: (1) he belongs to a protected class, (2) he applied and was qualified for a job for which FedEx was seeking applicants, (3) FedEx rejected his application, and (4) after his rejection, the position remained open and FedEx continued to seek applicants from persons of Mr. Pathak's qualifications or FedEx filled the position. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 982–83 (10th Cir. 2008); *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (unpublished). Mr. Pathak's "burden in articulating a prima facie case is slight." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

I find that Mr. Pathak establishes a prima facie case. In fact, FedEx does not dispute any of the four elements. Mot. for Summ. J. 21, ECF No. 93 ("For purposes of summary judgment, FedEx does not dispute that Mr. Pathak is a member of a protected class. . . ."); Def.'s Statement of Facts

_____

[2] FedEx argues that Mr. Pathak fails to establish a hostile work environment claim. Mot. for Summ. J. 18–20, ECF No. 93. In response, Mr. Pathak states he has not asserted such a claim. Resp. to Mot. for Summ. J. 35 n.18, ECF No. 99. Thus, to the extent some of Mr. Pathak's allegations could be read as asserting a claim for hostile work environment, *see* Am. Compl. ¶¶ 97–98, 120, 136, 142, 150, Mr. Pathak voluntarily dismisses that claim.

¶¶ 17–18, 30 (stating that Mr. Pathak applied for the supervisor and team lead positions, but that FedEx selected another applicant—the "most qualified" applicant); Def.'s Reply in Supp. of Mot. for Summ. J. 2, ECF No. 103 (not disputing Mr. Pathak's contention that he was qualified for the promotions based on his substantial industry experience).

Although FedEx argues Mr. Pathak does not establish causation, Mot. for Summ. J. 21, ECF No. 93, the Tenth Circuit has made clear that an employee who meets the four elements explained above establishes causation for purposes of a prima facie case. *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) ("[A]n employee who belongs to a racial minority and who eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job, has at least raised an inference that the termination was based on a consideration of impermissible factors."); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1228–29 (10th Cir. 2000) (same). Therefore, Mr. Pathak establishes the elements of a prima facie failure-to-promote claim. I must next analyze whether FedEx asserts a non-discriminatory reason for its action.

b.      Non-Discriminatory Reason

FedEx asserts it declined to promote Mr. Pathak because the other candidates were more qualified than he. Mot. for Summ. J. 22 ("The evidence shows that Krupar chose an employee more qualified than Pathak for both the Supervisor and Team Lead positions."). This is a valid non-discriminatory reason. *Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir. 1984) ("[S]uperior qualifications constitute[s] a legitimate, nondiscriminatory reason . . . ."). Therefore, the burden shifts back to Mr. Pathak to demonstrate this reason is pretext for race and national origin discrimination.

c.      Pretext

A plaintiff demonstrates pretext by showing "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Lobato v. N.M. Envtl. Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Courts consider a variety of factors in determining whether a plaintiff has shown pretext, including: (1) whether the evidence indicates that the employer's proffered reason is false, which frequently involves analyzing the plaintiff's qualifications and the defendant's perception of the plaintiff's prior work performance; (2) the use of subjective criteria, especially when used to evaluate candidates that are not objectively equally qualified; (3) the employer's prior treatment of the plaintiff; (4) procedural irregularities; and (5) the employer's general policy with respect to minority employment, particularly statistics reflecting a general pattern of discrimination. *Colon-Sanchez*, 733 F.2d at 81; *Kendrick*, 220 F.3d at 1230; *Santana v. City & County of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) ("We will draw an inference of pretext where 'the facts assure us that the plaintiff is better qualified than the other candidates for the position.'" (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003))).

Here, Mr. Pathak produces evidence of the first and third factors, which I find sufficient to overcome summary judgment. First, there is evidence indicating FedEx's reason for not promoting Mr. Pathak is false. Perhaps most telling, according to Mr. Pathak, Mr. Krupar told him he did not receive the supervisor promotion because of his Indian accent. Pathak dep. 140:16–:20. "[C]omments regarding a plaintiff's accent may constitute circumstantial evidence of discrimination based on national origin." *Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir. 2009); *Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815, 819 (10th Cir. 1984). Additionally, Mr. Teschler and Ms. Zobel—the employees FedEx hired instead of Mr. Pathak—arguably had less experience. Mr.

Teschler had six and a half years of relevant experience, and Ms. Zobel had been working in FedEx's brokerage department for one or two years before receiving the promotion. Teschler dep., 22:8–:11, ECF No. 99-13; Krupar dep., 154:17–155:6, ECF No. 99-6. Mr. Pathak had approximately twenty-one years of industry experience. Def.'s Statement of Facts ¶¶ 1, 63; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 1, 63, ECF No. 99; Pathak dep., 22:8–:15, ECF No. 89-1, 99-7. Such a disparity in relevant experience can contribute to a finding of pretext. *See Griffis v. City of Norman*, 232 F.3d 901, at *6 (10th Cir. 2000) (Table) (finding sufficient evidence of pretext, in part because, the plaintiff had twenty-one years more experience than the individual who received the promotion). If a jury were to believe all of this testimony, it could reasonably conclude that FedEx did not deny Mr. Pathak a promotion because of inferior qualifications.

Second, Mr. Pathak produces evidence that Mr. Krupar treated him in a racially hostile manner. In January 2013, Mr. Krupar asked Mr. Pathak why Asian people get cold sores, and they commented that Americans do not have cold sores. Def.'s Statement of Facts ¶ 67; Pl.'s Resp. to Def.'s Statement of Facts ¶ 67. Two months before Mr. Krupar declined to promote Mr. Pathak, Mr. Krupar stated in an email, "In Asia everyone is late all the time but that does not cut it here." ECF No. 89-13, at 3. Although isolated racial comments are insufficient to establish pretext, *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006), these comments combined with the evidence already discussed at least create a triable issue of fact regarding pretext, especially because Mr. Krupar was the decisionmaker regarding the promotions. *Wood v. City of Topeka, Kan.*, 17 F. App'x 765, 768 (10th Cir. 2001) (unpublished) ("To be significant evidence of pretext, however, the objectionable conduct or remarks should be attributable to an individual responsible for the employment decision.").

## 2. Termination

Mr. Pathak also contends FedEx violated Title VII and § 1981 when it terminated him because of his race and national origin. Am. Compl. ¶¶ 97, 115. Mr. Pathak provides sufficient evidence to create a triable issue of fact regarding this claim.

### a. Prima Facie Case

"[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). FedEx does not dispute that Mr. Pathak satisfies the first two elements. Mot. for Summ. J. 21. Therefore, I must analyze only whether Mr. Pathak establishes an inference of discrimination.

Mr. Pathak carries his burden. Before FedEx terminated Mr. Pathak, Mr. Krupar made racially hostile remarks on at least three occasions. First, in a meeting on June 23, 2014, Mr. Krupar told Mr. Pathak he had an anger management problem, and he portrayed Mr. Pathak's face as that of a monkey. Def.'s Statement of Facts ¶ 22; Pl.'s Resp. to Def.'s Statement of Facts ¶ 22; Pathak dep. 136:7–138:24. Although FedEx disputes that Mr. Krupar intended to portray a monkey, I must view this evidence in a light most favorable to Mr. Pathak at this stage. Second, Mr. Krupar commented that Mr. Pathak does not have American experience, and his Indian accent is too strong. Pathak dep. 139:21–141:25. Finally, Mr. Krupar stated that everyone in Asia is late all the time, but that is not acceptable in America. ECF No. 89-13, at 3. Because Mr. Krupar was one of the managers ultimately responsible for Mr. Pathak's suspension and termination, I find these comments sufficient to establish a prima facie case of national origin and race discrimination. *See Greene v. Turf Club Servs., Inc.*, No. CIV. A. 98-5393, 2000 WL 19624, at *2–3 (E.D. Pa. 2000) (holding that

20

the plaintiff established a prima facie case by showing that his supervisor, who was responsible for his termination, made a number of comments exhibiting racial hostility); *see generally Orr*, 417 F.3d at 1149 ("At the prima facie stage, the plaintiff's burden is 'not onerous.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

b.      Non-Discriminatory Reason

FedEx asserts a legitimate non-discriminatory reason for terminating Mr. Pathak—"that Pathak displayed insubordinate and disruptive conduct toward his managers."  Mot. for Summ. J. 23; *Honeycutt v. Safeway, Inc.* 475 F. Supp. 2d 1063, 1074 (D. Colo. 2007) (finding that insubordinate behavior was a legitimate and non-discriminatory reason for an adverse employment action).  Accordingly, the burden shifts back to Mr. Pathak to demonstrate a triable issue of fact as to whether this reason was pretext for unlawful discrimination.

c.      Pretext

In support of his pretext argument, Mr. Pathak produces evidence that FedEx's asserted nondiscriminatory reason is false, that FedEx treated him differently from other employees, and that his supervisor acted in a racially hostile manner.  I find this sufficient to establish pretext for purposes of summary judgment.

First, viewing the evidence in a light most favorable to Mr. Pathak, a jury could reasonably determine that he was not as insubordinate as FedEx claims.  Although Mr. Pathak objected to closed-door meetings for mental health reasons and regularly complained that his managers were retaliating against him, he continued to take part in the meetings as requested.  ECF No. 89-8, at 14; Hawkins dep., 28:24–29:5, ECF No. 89-6; Pathak dep. 289:11–290:5; Def.'s Statement of Facts ¶¶ 21, 36, 44, 53; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 2, 36, 44, 53.  Additionally, Mr. Pathak left the final closed-door meeting after receiving permission from HR and only because he felt as

if he was going to collapse. Pathak dep. 289:11–290:5, 295:18–:24. To be sure, Mr. Pathak potentially raised his voice during a meeting with Mr. Krupar, and he verbally challenged his supervisor after receiving an email with feedback. However, two other participants in the meeting stated that although Mr. Pathak raised his voice, he did not yell, Krupar dep. 184:19–:24,[3] and Mr. Pathak testified under oath that he responded to his supervisor in an calm manner without yelling. Pathak dep. 286:12–:15. A jury could, and very well may, reasonably accept FedEx's evidence that Mr. Pathak yelled across the office and was consistently unwilling to accept constructive criticism. However, a jury could also believe Mr. Pathak's testimony and conclude that FedEx did not truly believe Mr. Pathak's behavior warranted termination.[4] I cannot resolve this factual dispute at summary judgment.

Second, Mr. Pathak presents evidence that his managers treated him differently than his non-minority co-workers. *See E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 489 (10th Cir. 2006) ("A plaintiff [] 'may show pretext by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness,' provided the 'similarly situated' employee shares the same supervisor, is subject to the same performance standards, and otherwise faces comparable 'relevant employment circumstances.'" (quoting *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir.2005))). At least

---

[3] I recognize that this testimony potentially constitutes inadmissible hearsay. However, neither party asserts a hearsay objection.

[4] Although FedEx correctly asserts that courts are to examine the facts as they appear to the employer, Reply in Supp. of Mot. for Summ. J. 12, if a jury were to believe that Mr. Pathak acted in a calm and respectful manner toward Mr. Krupar, it could reasonably find that the facts as they appeared to Mr. Krupar were not as he claims. That a court must examine facts as they appear to the employer does not mean that courts must accept as true the employer's version of the facts.

two of Mr. Pathak's co-workers engaged in insubordinate conduct.[5]  Sydney Bird raised his voice

to his supervisor, Ms. Dallacarus, and moved in a way that made her feel threatened.  ECF No. 100-

8.  Mr. Krupar delayed reporting the incident to HR, and Mr. Krupar does not remember giving Mr.

Bird a written warning.  *Id.*; Krupar dep. 323:21–324:1.  Similarly, Stephen Hurt became angry,

threw files, and slammed a door.  ECF No. 100-9.  Mr. Krupar gave Mr. Hurt a warning for

unacceptable behavior.  *Id.*  Viewing the evidence in a light most favorable to Mr. Pathak, he

verbally confronted his supervisors for providing feedback, protested closed-door meetings, and left

one meeting due to feeling sick.  In response, Mr. Krupar, and other supervisors at FedEx, suspended

(and eventually terminated) his employment.  ECF No. 89-9, at 50–51.

FedEx argues that no other employee had a similar history of consistent insubordinate

behavior.  Reply in Supp. of Mot. for Summ. J. 5–6.  However, with regard to Mr. Bird, Mr. Krupar

believed bringing the incident to HR's attention could cause him to have another outburst.  *See* ECF

No. 100-8.  This is at least some evidence that Mr. Bird had a reputation of becoming angry and

insubordinate, which is sufficient to demonstrate that he and Mr. Pathak were similarly situated.  *See*

*Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995) ("When comparing the relative treatment

of similarly situated minority and non-minority employees, the comparison need not be based on

identical violations of identical work rules; the violations need only be of 'comparable

---

[5] Mr. Pathak also presents this evidence to demonstrate that FedEx failed to follow a
progressive discipline policy that it used with other employees.  Resp. to Mot. for Summ. J.
21–22, 34–35.  However, I do not rely on this evidence for this purpose.  It is undisputed that
FedEx's progressive discipline "policy" was discretionary, ECF No. 89-9, and the Tenth Circuit
has specifically held that failure to follow a discretionary policy is not evidence of pretext.
*Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) ("Because progressive
discipline was entirely discretionary in such cases, and U.S. Bank, therefore, did not ignore any
established company policy in its choice of sanction, the failure to implement progressive
discipline is not evidence of pretext.").  Therefore, I rely on this evidence only in so much as it
demonstrates FedEx treated Mr. Pathak differently than similarly situated employees.

seriousness.'"). Moreover, viewing the evidence in a light most favorable to Mr. Pathak, he did not

have an extensive history of insubordinate behavior. Instead, as explained above, he potentially

raised his voice to Mr. Krupar during one meeting, he verbally responded to Mr. Teschler in a calm

manner, and he regularly asked not to be given in-person feedback due to his depression and anxiety.

Lastly, Mr. Pathak demonstrates pretext through evidence that Mr. Krupar treated him in a

racially hostile manner. As explained above, Mr. Krupar told Mr. Pathak that he did not receive a

promotion, because he did not have "American experience" and his accent was too "Indian." Pathak

dep. 140:16–:20. Furthermore, viewing the evidence in a light most favorable to Mr. Pathak, Mr.

Krupar portrayed Mr. Pathak as resembling a monkey. Pathak dep. 136:7–138:24. Because this

took place during a meeting in which Mr. Pathak was accused of insubordinate conduct, it is at least

arguably related to the decisional process. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531

(10th Cir. 1994) (requiring a "nexus [] between the[] allegedly discriminatory statements and the

[employer's] decision to terminate [the plaintiff]"). After this meeting concluded, Mr. Krupar went

to Mr. Pathak's cubicle, pulled his chair away from his desk, and told him to leave the office. Def.'s

Statement of Facts ¶ 24; Pl.'s Resp. to Def.'s Statement of Facts ¶ 24. Finally, although not directly

made to Mr. Pathak, Mr. Krupar stated about him, "In Asia everyone is late all the time but that does

not cut it here." ECF No. 89-13, at 3. All of these comments and conduct, taken together, at least

raise an inference that Mr. Krupar and the other FedEx employees responsible for Mr. Pathak's

termination did not fire him because of his insubordinate conduct. *See Tomsic v. State Farm Mut.*

*Auto. Ins. Co.*, 85 F.3d 1472, 1478 (10th Cir. 1996) (finding that the plaintiff made a sufficient

showing of pretext, because individuals with input into her termination decision directed arguably

gender-biased remarks at her).

In its reply brief, FedEx argues that "none of [the comments] directly reflect a discriminatory

motive on the part of Krupar. . . . [T]he[y] could arguably be non-discriminatory in nature." Reply in Supp. of Mot. for Summ. J. 4–5. FedEx is correct that the comments are not direct evidence of discrimination, and that a reasonable jury could find them insufficient to prove a discriminatory motive. However, this does not make summary judgment proper. Because the comments explicitly relate to Mr. Pathak's race and national origin, a jury could also find that they demonstrate discriminatory animus.

For its part, FedEx cites much evidence indicating that Mr. Pathak acted in a difficult and insubordinate manner. Furthermore, much of the evidence Mr. Pathak relies on, such as that regarding FedEx's progressive discipline policy, does not help establish pretext. However, given all of the evidence discussed above and the general rule that "the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff," *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005), I find Mr. Pathak has made a sufficient showing of pretext to survive summary judgment on his Title VII and § 1981 race and national origin discrimination claims.

B.    ADA Cause of Action: Fifth Claim

Mr. Pathak's fifth cause of action asserts FedEx unlawfully terminated him because of his diagnosed major depressive affective disorder.[6] Am. Compl. ¶¶ 129–39, ECF No. 67. Additionally,

_____

[6] Mr. Pathak's fifth claim does not assert FedEx failed to promote him because of his disability. Instead, it states that FedEx discriminated against him on the basis of his disability by creating a hostile work environment, subjecting him to more severe discipline, refusing to accommodate his disability, and terminating his employment. Am. Compl. ¶ 136, ECF No. 67. Furthermore, Mr. Pathak confines his ADA claim to his termination in his response brief. Resp. to Mot. for Summ. J. 29 n.12, ECF No. 99 ("A jury also should be allowed to decide whether Defendant illegally discriminated against Plaintiff by terminating him because of his known disability . . . and by failing to accommodate his known disability arising from his anxiety/depression.").

Mr. Pathak claims FedEx violated the ADA when it denied Mr. Pathak's request to receive feedback via email. *Id.* ¶¶ 134–38. Because I find that Mr. Pathak failed to exhaust his failure to accommodate claim, I must analyze only whether he demonstrates a triable issue of fact regarding his ADA discrimination claim. As I stated above, ADA claims are subject to the same *McDonnell Douglas* burden-shifting framework as Title VII and § 1981 claims. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003).

To establish a prima facie disability discrimination claim, a plaintiff must show: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). FedEx does not dispute that Mr. Pathak has a disability and was qualified for his job. Mot. for Summ. J. 21, ECF No. 93. Accordingly, I must analyze only the third element of the prima facie case, which requires Mr. Pathak to show that FedEx terminated him "under circumstances which give rise to an inference that the termination was based on [his] disability." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). While Mr. Pathak's burden to prove the third element is "not onerous, it is also not empty or perfunctory." *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 747–49 (10th Cir. 1999).

I find that Mr. Pathak presents insufficient evidence to meet his burden. Unlike for his race and national origin claims, Mr. Pathak did not testify that anyone at FedEx made comments regarding his disability. To the contrary, while Mr. Pathak was on medical leave, Mr. Krupar wished Mr. Pathak well, stated he was glad Mr. Pathak was feeling better, and said he looks forward to Mr. Pathak's recovery and return to the office. ECF No. 89-8, at 106–07, 104. Additionally, FedEx permitted Mr. Pathak to take two medical leaves of absence and allowed him to work part-

time for several weeks to attend doctor appointments. ECF No. 89-8, at 72; ECF No. 89-9, at 9; ECF No. 100-3, at 12. This differentiates this case from *Preeeson v. Parkview Medical Center, Inc.*, in which the plaintiff's supervisor declared the plaintiff's disability and need for FMLA leave "baloney." No. 15-cv-02263-MSK-KMT, 2017 WL 1197298, at *12 (D. Colo. Mar. 30, 2017). Instead, this case is more similar to *Angell v. Fairmount Fire Protection District*, in which the court found that the plaintiff failed to establish a prima facie ADA claim, in part because his supervisors did not make comments reflecting a discriminatory animus. 907 F. Supp. 2d 1242, 1252 (D. Colo. 2012).

In addition to the lack of comments or actions exhibiting disability animus, five months passed between Mr. Pathak's diagnosis and termination. ECF No. 100-7 (stating that Mr. Pathak was diagnosed with major depressive affective disorder in June 2014). Without additional evidence, this type of temporal proximity between diagnosis and termination is insufficient to establish a prima facie case. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("'[U]nless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation. . . . [A] three-month period, standing alone, is insufficient." (second alteration in original) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999))).

In sum, Mr. Pathak's claim is based on the fact that FedEx was aware of his disability. "[M]ere awareness of disability, without more, is not sufficient to show that disability was a 'determining factor' in the employer's adverse action." *Angell*, 907 F. Supp. 2d at 1252 (D. Colo. 2012); *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cty., Okla.*, 232 F. App'x 765, 771 (10th Cir.2007) (unpublished) ("[I]t does not follow that a reasonable inference of discrimination may be drawn from mere awareness of a disability or that mere awareness is affirmative evidence that may

establish the third element of the prima facie case.").  Accordingly, Mr. Pathak fails to establish a prima facie ADA discrimination case.

### III.    Retaliation Claims

Mr. Pathak contends FedEx terminated him in retaliation for his complaints of unlawful discrimination and retaliation.[7]  Am. Compl. ¶¶ 118–27, 140–46, ECF No. 67.  Courts analyze ADA, Title VII, and § 1981 retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

#### A.    Title VII and § 1981 Causes of Action: Second and Fourth Claims

I first find that Mr. Pathak establishes prima facie Title VII and § 1981 retaliation claims. I then hold that Mr. Pathak presents sufficient evidence of pretext.

##### 1.    Prima Facie Case

The elements necessary to establish a prima facie retaliation claim under Title VII and § 1981  are: (1) the plaintiff engaged in protected opposition to discrimination, (2) the plaintiff suffered a material adverse employment action, and (3) a causal connection exists between the protected opposition and the adverse employment action.  *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009).  FedEx does not dispute that Mr. Pathak engaged in protected opposition to discrimination and retaliation starting with his EEOC charge in July 2014 and continuing through his informal complaints in December 2014.  Mot. for Summ. J. 25–26, ECF No. 93.  Additionally,

---

[7] Unlike Mr. Pathak's Title VII & § 1981 discrimination claims, the Amended Complaint and Mr. Pathak's response brief do not assert that FedEx failed to promote him in retaliation for engaging in protected conduct.  Am. Compl. ¶¶ 106, ECF No. 67 (stating that FedEx retaliated by terminating Mr. Pathak's employment), 120 (same); Resp. to Mot. for Summ. J. 31 n.14, ECF No. 99 ("Defendant does not dispute that Mr. Pathak's termination meets the second prong of a *prima facie* case of retaliation (materially adverse action).").  Accordingly, I confine my analysis of Mr. Pathak's retaliation claims to his termination.

FedEx acknowledges that Mr. Pathak's termination constitutes a material adverse employment action. *Id.* at 26. Therefore, the only remaining issue is whether a causal connection exists between Mr. Pathak's protected complaints and his termination.

The proximity in time between Mr. Pathak's protected conduct and his termination establishes a causal connection sufficient to overcome summary judgment. Mr. Pathak complained of retaliation during the November 17, 2014 meeting, which was mere hours before his suspension and a month before his termination.[8] Pathak dep. 296:2–:5, ECF No. 99-7; ECF No. 89-9, at 50–51. Additionally, Mr. Pathak had complained of retaliation the day before in an email to Mr. Teschler, Mr. Krupar, and Mr. Holmes. Def.'s Statement of Facts ¶ 44; Pl.'s Resp. to Def.'s Statement of Facts ¶ 44; ECF No. 89-9. The Tenth Circuit has held that a one and one-half month period between protected activity and adverse action may establish causation by itself. *Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994). Therefore, the proximity between Mr. Pathak's retaliation complaints and his termination establish a prima facie retaliation case.

FedEx argues proximity should be measured on Mr. Pathak's first complaint, which was over nine months prior to his termination. Reply in Supp. of Mot. for Summ. J. 7, ECF No. 103. However, the Tenth Circuit has held that proximity is measured based on the employee's "last

---

[8] Mr. Pathak's complaints on November 16 and 17 did not specifically state that FedEx was discriminating against him based on his race and national origin or in retaliation for his race discrimination complaints. Instead, Mr. Pathak complained generally of retaliation. Def.'s Statement of Facts ¶ 44; Pl.'s Resp. to Def.'s Statement of Facts ¶ 44; ECF No. 89-9. In determining whether conduct is protected, "[t]he relevant question is 'whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.'" *Malik v. Amini's Billiard & Bar Stools, Inc.*, 454 F. Supp. 2d 1106, 1117 (D. Kan. 2006) (quoting *Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 550 (D. Kan. 1995)). Here, given Mr. Pathak's regular complaints specifically mentioning race and national origin discrimination, ECF No. 99-8; ECF No. 99-14, at 3–6; ECF No. 89-9, at 26, Mr. Pathak's statements on November 16 and 17 sufficiently convey his concern that FedEx was retaliating due to his race and national origin.

instance of protected activity." *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 804 (10th Cir. 2007) ("[T]he challenged actions were within a month of [the plaintiff's] last instance of protected activity. We have previously held that such temporal proximity, alone, is sufficient to allow an inference of the existence of a causal connection between the two events."). In fact, in the case FedEx cites to support its argument, the Tenth Circuit based proximity on the date of the "last administrative charge." *Proctor v. United Parcel Servs.*, 502 F.3d 1200, 1208 (10th Cir. 2007). Although the court rejected the argument that an employee engages in protected activity until the administrative agency issues a right to sue letter, *id.* at 1209, Mr. Pathak does not raise that argument.

FedEx also asserts that intervening acts of misconduct disrupt the causal connection established by proximity. Reply in Supp. of Mot. for Summ. J. 8–9. However, viewing the evidence in a light most favorable to Mr. Pathak, he objected that the December 17 meeting was retaliatory, stated that he was not feeling well, and went back to his cubicle after receiving permission from HR. Def.'s Statement of Facts ¶ 53; Pl.'s Resp. to Def.'s Statement of Facts ¶ 53; Pathak dep. 295:18–:24. This conduct is not sufficiently serious to undermine the causal link established by proximity.

In sum, because FedEx suspended Mr. Pathak within hours of his last retaliation complaint and terminated him approximately one month later, Mr. Pathak demonstrates a causal connection between his protected activity and his termination.

### 2. Non-discriminatory Reason

As explained above, FedEx's proffered reason for terminating Mr. Pathak—that he was insubordinate and disruptive toward his managers—is a legitimate non-discriminatory reason. Accordingly, Mr. Pathak must offer evidence suggesting that this reason is pretext for a retaliatory motive.

3.      Pretext

As I stated above, a plaintiff generally shows pretext through (1) evidence indicating that the employer's proffered reason for the discrimination is false; (2) evidence that the employer used subjective criteria in the employment decision; (3) evidence of the employer's prior treatment of the plaintiff; (4) procedural irregularities; and (5) statistics reflecting a general pattern of discrimination. *Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir. 1984).  Although a very close call, the evidence before me demonstrates that FedEx's reason for terminating Mr. Pathak may have been pretext for retaliatory animus.

First, although not sufficient by itself to establish pretext, the temporal proximity between Mr. Pathak's protected conduct and his retaliation is highly probative of pretext.  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) ("[T]emporal proximity is a factor in showing pretext.").

Second, a jury could find that Mr. Pathak's supervisors treated him differently after he began complaining of race and national origin discrimination.  Before Mr. Pathak made his first discrimination or retaliation complaint, Mr. Holmes stated that he has "the aptitude and attitude" to perform the job well.  ECF No. 99-3.  Additionally, FedEx promoted Mr. Pathak and gave him a raise.  ECF No. 89-7, at 130.  Shortly after this promotion, Mr. Pathak complained that he did not receive an additional raise "because of the color of [his] skin."  ECF No. 99-8.  Although he applied for many, Mr. Pathak did not receive another promotion while working at FedEx.  Furthermore, it was only after Mr. Pathak's complaints that his supervisors treated him in a hostile manner, such as by coming to his cubicle and shutting down his computer.  Def.'s Statement of Facts ¶ 18. "Evidence of different treatment after protected activity is probative of pretext."  *Enstrom v. Beech Aircraft Corp.*, 712 F. Supp. 841, 850 (D. Kan. 1989).  Although a jury could certainly find that FedEx treated Mr. Pathak differently because of his performance and insubordinate behavior,

whether Mr. Pathak was truly recalcitrant is a disputed issue of fact that I cannot resolve at this stage.

Third, Mr. Pathak's evidence that his supervisor made comments exhibiting racial animus is probative of pretext. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001) ("[E]vidence of racial animus is relevant to [the plaintiff's] retaliation claim."); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1111 (10th Cir. 1998) (stating that the plaintiff's "efforts to attribute racial animus to these acts in furtherance of his hostile work environment claim necessarily relate to the establishment of pretext in the retaliation claims").[9] As I discussed above with regard to Mr. Pathak's termination claim, Mr. Krupar made at least three racially hostile comments within the eight months preceding Mr. Pathak's termination.

Finally, if the jury were to believe Mr. Pathak's testimony, and that of some of his co-workers who claimed he was not yelling during conversations with his supervisors, Krupar dep. 184:19–:24, it could reasonably find that he did not have a history of insubordinate behavior. "[T]he trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Accordingly, this constitutes further evidence in support of pretext.

In sum, the evidence before me sufficiently establishes that FedEx's asserted reason for terminating Mr. Pathak was pretext for retaliation. Any one of the factors supporting a finding of pretext would likely be insufficient by itself. However, taking all of this evidence together and

---

[9] The Tenth Circuit has also stated that a racially derogatory remark is not probative of retaliatory animus. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 44 F. App'x 411, 418 n.2 (10th Cir. 2002) (unpublished). However, this statement appeared in a footnote of an unreported case, and the court did not cite to any prior cases or distinguish the cases I cite above. Moreover, it is logical that a supervisor who makes comments exhibiting racial animus is more likely to retaliate against an employee for complaints regarding those comments.

drawing all inferences in favor of Mr. Pathak, I hold he has met his burden with regard to his Title VII and § 1981 retaliation claims.

B.     ADA Cause of Action: Sixth Claim

Mr. Pathak's sixth claim asserts FedEx terminated him because of his disability and requests for accommodation. Am. Compl. ¶¶ 140–46, ECF No. 67. Although Mr. Pathak establishes a prima facie case, he fails to carry his burden of demonstrating pretext.

1.     Prima Facie Case

To establish a prima facie case of ADA retaliation, an employee must prove: "(1) that she engaged in an activity protected by the statute; (2) that 'she was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity;' (3) that there was a causal connection between the protected activity and the adverse action." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)).

Mr. Pathak establishes these elements. First, he engaged in protected activity by regularly requesting an accommodation for his depression—that FedEx permit him to receive feedback by email. *Jones v. United Parcel Servs., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007) ("We have treated requests for reasonable accommodation as protected activity under the ADA."). Second, FedEx terminated Mr. Pathak, which constitutes an adverse employment action. *Anderson*, 181 F.3d at 1178 ("We conclude that Plaintiff suffered adverse employment action when Defendant terminated her."). Third, Mr. Pathak requested the accommodation just one day prior to his suspension and one month before his termination. ECF No. 89-9, at 44–49. This is sufficient to establish a causal connection. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1991 (10th Cir. 2016) ("Because the purported protected activity here occurred mere days or even hours before the adverse employment

action, we conclude that Foster can show causation at the prima facie stage solely with evidence of temporal proximity.").

### 2. Non-discriminatory Reason

FedEx asserts it terminated Mr. Pathak because of his insubordinate conduct, which as I have stated, constitutes a legitimate non-discriminatory reason for his termination.

### 3. Pretext

I find Mr. Pathak fails to submit sufficient evidence of pretext. Unlike with regard to his race and national origin complaints, his supervisors did not start treating him differently directly after he was diagnosed with major depressive affective disorder or after he began requesting the accommodation. In fact, Mr. Pathak requested the accommodation partially due to the fact that his supervisors were allegedly treating him poorly. Similarly, Mr. Pathak does not present evidence that his supervisors made comments demonstrating disability bias. Although they denied his requests for feedback via email, they did not ridicule his request or his disability. Therefore, Mr. Pathak relies purely on the temporal proximity between his requests for accommodation and his termination. This is insufficient to establish pretext. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) ("[C]lose temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment.").

### CONCLUSION

In sum, Mr. Pathak exhausted his administrative remedies with regard to his claims for discriminatory and retaliatory termination and discriminatory failure to promote. However, he did not include in his EEOC charge any allegations regarding FedEx's failure to accommodate his disability. Additionally, all of FedEx's actions taking place prior to April 23, 2014 cannot form the basis for Mr. Pathak's claims.

Regarding the merits of his claims, Mr. Pathak demonstrates triable issues of fact underlying his Title VII and § 1981 race and national origin discrimination and retaliation claims. Accordingly, I deny summary judgment on Mr. Pathak's first, second, third, and fourth claims. However, Mr. Pathak fails to produce evidence demonstrating that FedEx terminated him because of his disability or retaliated against him for being disabled or requesting an accommodation. As such, I grant summary judgment in favor of FedEx on Mr. Pathak's fifth and six causes of action. FedEx's Motion for Summary Judgment [filed February 28, 2018; ECF No. 89] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 20th day of June, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge